IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § § § |
| vs. | § § § § NO. 5-20-CR-00284-OLG |
| PAUL ZAPPE,  *Defendant*. | § § § § § |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable Chief United States District Judge Orlando Garcia:**

This Report and Recommendation concerns Defendant Paul Zappe's Motion to Suppress Illegally Obtained Evidence and Request for a *Franks* Hearing. *See* Dkt. No. 30. The Government filed a Response to the Motion, Dkt. No. 31, and Zappe filed a Reply, Dkt. No. 34. The District Judge referred this matter via a text order entered on August 31, 2020. Jurisdiction for this Report and Recommendation stems from 28 U.S.C. § 636(b)(1). *See also* Local Rule CR-58; App. C to Local Rules.

A grand jury indicted Defendant Zappe on two counts of production of child pornography and four counts of possession of child pornography. The Government alleges Zappe stored evidence of his illegal activities on various devices, including a computer, hard drives, flash drives, and an iPhone. Zappe seeks to suppress evidence obtained from a search of his iPhone. According to Zappe, the search warrant obtained from a Bexar County Magistrate Judge authorizing the search was overbroad and lacked a sufficient showing of probable cause. More specifically as to probable cause, Zappe urges that the affidavit supporting the warrant contained

deliberate falsehoods that, when excised from the affidavit, render the affidavit incapable of supporting a probable-cause finding. Zappe requests an opportunity to cross-examine the affiant to challenge the truthfulness of factual statements in the warrant affidavit, as contemplated in *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

As discussed further below, Zappe fails to make the showing required to justify a *Franks* hearing and fails to establish that the evidence obtained from the iPhone should be suppressed. It is therefore recommended that the Motion to Suppress Illegally Obtained Evidence and Request for a *Franks* Hearing, Dkt. No. 30, be **DENIED**.

## Background

On January 6, 2020, Defendant Zappe had a scheduled appointment with an AT&T technician to visit his residence and address problems with the internet service. That technician would later provide a formal statement about the events that occurred during the service call. The technician noted in his statement that he "was surprised when Mr. Zappe answered the door and was only wearing boxer shorts." Dkt. No. 30-2 (Statement). The technician further noted in his statement that Zappe remained with the technician "throughout [his] assessment of the work," except for one brief—but key—spell when Zapped walked away "for a few minutes." *Id*. Once in Zappe's "office" at his home, the technician noted that Zappe's computer was attached to a flat-screen television serving as a monitor. The technician, in his statement, appeared to estimate the television's screen size at 42 inches across the diagonal, although the statement refers to a 42-inch "diameter." *Id*. Performing his work, the technician moved some wires and caused the computer screen to wake up from sleep mode. Once awake, the monitor displayed between 10 to 15 images that "showed [ ] young boys nude and their penis was clearly visible. All of the images were nude and some might have been young girls." *Id*. The images, the technician noted,

were stored in a folder labeled, "Special." *Id*. Seeing the images, the technician explained in his statement, "upset [the technician] because" the technician has "children of [his] own." *Id*. Concerned, the technician excused himself from Zappe's home and spoke with a co-worker, who ultimately contacted the authorities. The technician's statement concludes by noting that once the co-worker contacted authorities, Investigator John Barrera of the Bexar County Sheriff's Office contacted the technician "for a follow up interview about the incident." *Id*. Investigator Barrera ultimately obtained the aforementioned formal statement from the technician. *See id*. Another investigator, M. Donato, spoke with the co-worker and obtained a statement from him as well. *See* Dkt. No. 30-1 at 16.

On February 4, 2020, Investigator Barrera applied for and received from a Bexar County Magistrate Judge a warrant to search Zappe's residence for evidence of child pornography. In many respects, the language in the affidavit mirrors the language in the technician's statement, although there are differences between the two documents' descriptions of the events on January 6. The magistrate judge saw only the affidavit, not the technician's formal statement. Focusing on one key difference between the statement and the affidavit, along with the warrant's alleged overbreadth, Zappe argues for suppression of the iPhone evidence and a *Franks* hearing.

**Analysis**

Defendant Zappe's motion requests (1) a *Franks* hearing in which to cross-examine the search warrant's affiant to probe his truthfulness and (2) suppression of the evidence obtained from the search of Zappe's iPhone. Zappe seeks suppression on the basis that the warrant affidavit cannot support a finding of probable cause once false statements included in it are excised. He further seeks suppression on the ground that the warrant is overbroad in authorizing a search of his iPhone. His arguments do not warrant relief.

**A.     A *Franks* Hearing Isn't Warranted.** An affidavit in support of a search warrant enjoys a presumption of validity. *Franks*, 438 U.S. at 171. Overcoming that presumption to establish the need for a *Franks* hearing for purposes of investigating the affiant's good faith and truthfulness requires (1) a "*substantial* preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included . . . in the warrant affidavit" *and* (2) that the "allegedly false statement is necessary to the finding of probable cause." *Id*. at 155-66 (emphasis added); *United States v. Looney*, 532 F.3d 392, 394 (5th Cir. 2008) (per curiam).

Here, neither requirement is met. Taking the second requirement first, the allegedly false or misleading statement in the affidavit isn't necessary to a finding of probable cause. A *Franks* hearing is therefore not warranted. Moreover, there is no sufficient showing or other indicia that a false statement was included in the affidavit knowingly and intentionally, or with reckless disregard for the truth. These two independent reasons, therefore, support the denial of Zappe's request for a *Franks* hearing.

**1.     Even without the allegedly improper material, the affidavit provides probable cause to search the iPhone.** Zappe takes issue with differences between the affidavit's representation of the AT&T technician's description of the images displayed on Zappe's computer screen and the technician's formal statement. According to the search warrant's affidavit, the technician:

> stated that the screen displayed approximately 10 to 15 "thumbnail" images of young boys. The images depicted nude photos of young boys, and their "penis" was clearly exposed to the camera and the focal point in some cases.

Dkt 30-1 at 16 (Investigator Barrera's affidavit in support of the search warrant); *see* Mot. at 7-8. The formal statement the technician provided to Investigator Barrera is far less compelling, says Zappe. In fact, Zappe argues, the "affiant included [ ] language . . . [when] there was no basis to

conclude that images showed penises that were clearly exposed to the camera or the focal point in some cases." *Id.* "This language," says Zappe, should be stripped from the affidavit." *Id.*

Zappe's contention fails in two ways. First, it falsely assumes that the affidavit necessarily was based solely on the technician's formal statement. But the affiant nowhere attests that the factual statements in his affidavit were based solely on the technician's sworn statement. Instead, the affidavit reflects that Investigator Barrera interviewed the technician in addition to securing a formal, written statement from him. *See* Dkt. No. 30-1. Zappe's Reply acknowledges this fact. Dkt. No. 34 at 2 (Reply in Support of Motion to Suppress) ("Barrera interviewed the technician and the technician provided a sworn written statement regarding what he allegedly witnessed."). The affidavit notes that the technician "came into the Bexar County Sheriff's Office Criminal Investigations Division to provide a formal statement on what he saw. [The technician] provided details about the nude images he saw on Paul C. Zappe's home computer." *Id*. The affidavit also indicates that the technician's co-worker who first contacted authorities also provided information. ("[The work associate] contacted the Bexar County Sheriff's Office and provided a statement to Investigator M. Donato #1248 on January 6, 2020."). These matters, therefore, could have informed Barrera's description of events included in his sworn affidavit, and they also inform the inquiry into whether Barrera included in the affidavit false statements with knowledge and intent, or reckless disregard for the truth.

Second, the technician's formal statement supports at least some of the disputed language included in the affidavit. The statement describes the incident with Zappe's computer as follows:

> I noticed the screen displayed images of young boys. I noticed about 10 to 15 "Thumbnail[]" images which had nude photos of young boys. I noticed that the folder that contained the images was titled "Special". The nude images portrayed boys that I thought to be about 10 to 15 years old. The images showed the young boys nude and their penis was clearly visible. All of the images were nude and some might have been young girls.

Dkt. No. 30-2. The affidavit's description that the technician stated the boys' penises were "clearly exposed" is essentially mirrored in the technician's statement describing "their penis was clearly visible." *Id*. What appears to have been added, then, is at most the affidavit's language that the boys' penises were "the focal point in some cases." Zappe's Reply appears to concede this point. *See* Dkt. No. 34 at 3 ("The 'focal point' language transforms constitutionally permitted nudity into contraband. The significance of the 'focal point' language cannot be understated."). In the context of this specific affidavit, this is not an especially material piece of information, notwithstanding Zappe's assertions to the contrary.

The disputed "focal point" language isn't necessary to the probable-cause finding here because stripping that language from the affidavit leaves a finding that comfortably rests on at least the following facts that are not in dispute for purposes of the motion to suppress:

- Zappe requested an AT&T service call but answered the door for that call "wearing only 'boxer shorts, underwear.'" Dkt. No 30-1 at 15.

- This "shocked" the AT&T technician. *Id*.

- During the service call, Zappe accompanied the technician "throughout the home and never left his side." *Id*.

- Zappe's home computer had a 42-inch television screen connected to serve as a monitor. *Id*.

- When Zappe briefly left the technician alone, the 42-inch computer screen awoke to display 10 to 15 thumbnail images of nude young boys. *Id.* at 16. Again, Zappe knew that an AT&T technician would be coming to his home, yet his computer had open on it a folder displaying multiple thumbnail images of nude—not partially clothed—boys. These were not described as multiple pictures of a single or even a few boys; they were pictures of multiple young boys or perhaps girls.

- In every single one of the 10 to 15 pictures of a young boy, Zappe does not dispute for purposes his motion, the boy's penis was clearly visible. *Id*.

- The folder in which the images were stored was labeled "Special." *Id*.

- The pictures "startled" the technician, and he "quickly closed the folder" to avoid Zappe noticing that he had seen it. *Id*.

- The technician, a father himself, became "upset" upon seeing the images, made up an excuse to leave the premises, and called a co-worker to discuss the incident. *Id*. The co-worker reacted to this conversation by urging the technician to contact the authorities, and the co-worker ultimately contacted the authorities himself. *Id.*

This information, and the reasonable inferences drawn from it, provides sufficient probable cause, even without considering the affidavit's disputed "focal point" language. *See, e.g.*, *United States v. Froman*, 355 F.3d 882, 889-90 (5th Cir. 2004) (discussing reasonable inferences drawn from facts in a warrant-affidavit context). The information and reasonable inferences, in other words, are "sufficient to warrant a man of reasonable prudence in the belief" that Zappe possessed child pornography. *Ornelas v. United States*, 517 U.S. 691, 696 (1996); *see also Looney*, 532 F.3d at 394.

Accordingly, Zappe's arguments concerning the "focal point" language and that the images in question were at most child erotica are without merit. *See, e.g.*, Dkt. No. 34 at 1-4. Probable cause is determined by viewing all of "the facts and circumstances within an [affiant's] knowledge." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009) (quotation and brackets omitted). Considering all of the facts and circumstances within Barrera's knowledge and related in his affidavit, there is plenty to show probable cause. Zappe acted in a somewhat suspicious manner, accompanying the technician for almost the entire appointment. He answered the door in his underwear, even though a technician was scheduled to visit. His larger than typical computer screen, although asleep, was primed to display multiple nude images of young boys or girls, even as a technician was scheduled to visit the home. The images were of "very young boys" and clearly showed their penises. The various subjects in the 10 to 15 images were all nude. The images were in a folder labeled "Special." The images disturbed the

technician, a father himself, so much that he immediately left and phoned a co-worker. The co-worker was so concerned he urged the technician to contact police and ultimately contacted police himself. In short, Zappe's argument that "[t]here are no additional facts[] that would allow the magistrate to conclude that Zappe's alleged possession of child erotica would uncover evidence of child pornography" lacks merit. Dkt. No. 34 at 6.

  **2. Zappe fails to make a sufficient showing that Barrera included a knowing and intentional, or reckless, falsehood in his affidavit.** Although the affidavit includes a phrase that doesn't appear in the technician's formal statement, that fact alone is insufficient to warrant a *Franks* hearing. Given the other facts in the affidavit, the technician's statement, and the fact that both the technician and his co-worker were interviewed in addition to providing statements, Zappe falls short of making the required "substantial" showing of intentional and knowing, or reckless, action on the part of Barrera. *See Franks*, 438 U.S. at 155; *Looney*, 532 F.3d at 394.

  Although a hearing isn't warranted here—for two independent reasons—the circumstances of this case nonetheless should serve as a reminder of the importance of attention to detail in matters relating to obtaining and executing search warrants.

  **C. There Is No Basis to Suppress the Evidence from the iPhone.** Given the support in the affidavit for the probable-cause finding, there's little reason to undertake the typical *Leon* good-faith analysis. *See Froman*, 355 F.3d at 889. For the sake of completeness, I will briefly explain further.

  **1. *Leon*'s good-faith exception to the exclusionary rule applies.** The typical analysis in connection with a motion to suppress in this type of situation begins with evaluating whether law-enforcement authorities procured and executed the search warrant in

good faith. *See, e.g.*, *id.* at 888. If good faith is found lacking, the court then evaluates the probable-cause finding to see "whether the magistrate had a substantial basis for finding probable cause." *Id*. The Court has already determined that there was probable cause even if the complained-of statement in the affidavit is excised from it.

As to the initial good-faith inquiry, the officers here, including Investigator Barrera, acted in good faith in securing and executing the search warrant, and Zappe doesn't argue otherwise except with respect to the already discussed "focal point" statement in the affidavit. As to that statement, the Court has already determined above that Zappe fails to make a substantial showing that Investigator Barrera included a material falsehood with the requisite *mens rea*. Given that Zappe does not dispute the good faith of the officers executing (as opposed to obtaining) the warrant in question, there is little left to discuss. Under *Leon* and its progeny, exclusion of the evidence at issue here isn't warranted. *See id*.

      **2.**    **Zappe invokes no valid exception to *Leon*.** Zappe invokes an exception to *Leon*'s good-faith exception premised on making a showing that the affidavit includes an intentionally or recklessly false statement. As already discussed, Zappe fails to make even a substantial preliminary showing in this regard. No exception to *Leon* invoked by Zappe applies here.

      **D.**    **The Warrant Isn't Overbroad.** Finally, there is no merit to Zappe's argument that because the incident with the technician involved computer images displayed on his 42-inch television screen, the warrant overreached by authorizing a search of his iPhone. The Fourth Amendment provides that no warrant shall issue unless it "particularly describe[s] the place to be searched, and the persons or things to be seized." U.S. Const. Am. IV. Required in this regard, first, is that the warrant describe with particularity what is sought and, second, that the warrant

connect the things to be searched with the evidence supporting a finding of probable cause; the scope of the search, in other words, can't outstrip the probable cause supporting it. *E.g.*, *United States v. Sanjar*, 876 F.3d 725, 735 (5th Cir. 2017) ("The warrant must [ ] not be overbroad, meaning there must be probable cause to seize the particular things named in the warrant." (quotation omitted)). Zappe complains of a violation of this second principle. Mot. at 3 ("Zappe's complaint is described as one concerning the warrant's breadth."). As already discussed, there was ample probable cause to suspect Zappe possessed child pornography. At issue then is whether it was permissible to search Zappe's iPhone in addition to his house and computer. The answer is relatively straightforward.

Zappe's iPhone is not outside the scope of the warrant and the probable-cause finding supporting it. Cell phones in this day and age are ubiquitous. *See Carpenter v. United States*, 138 S. Ct. 2206, 2218 (2018) (noting, "individuals . . . compulsively carry cell phones with them all the time."). The warrant explains that that "[a]ny . . . cellphone in the possession of or controlled by the defendant" is an item sought to be searched and seized. Dkt. No. 30-1 at 1. The affidavit also explains that "it is likely that one mobile device, to include the mobile telephones used by Paul C. Zappe, III will be . . . on the person of Paul C. Zappe, III." *Id.* at 16. These statements "provide sufficient notice of what the [executing officers] may seize." *Sanjar*, 876 F.3d at 735.

As for why there was sufficient reason to believe the iPhone would contain evidence of child pornography, the warrant explains as follows how in these circumstances mobile phones like iPhones are akin to computers—indeed, much like the computer on which the technician saw numerous upsetting images of young nude boys, and perhaps girls:

- "Computers and digital technology (to *include mobile telephones*) have revolutionized the way in which individuals interested in child pornography interact with each other." Dkt. No. 30-1 at 11 (emphasis added).

- "The computer's and *mobile telephone's ability to store images* in digital form makes the computer and *mobile telephone themselves ideal repositories for child pornography*." *Id*. (emphasis added).

- "Computers basically serve four function in connection with child pornography: production, communications, distribution, and *storage*." *Id*. at 12 (emphasis added).

- "[C]ommunications by way of computer and mobile telephone can be saved or stored on the computer used for these purposes." *Id*. at 13.

- [D]uring the search of the premises it is not always possible to search computer equipment, mobile telephones, and storage devices . . . ." *Id*.

These statements in the affidavit make clear that, in the affiant's training and considerable experience (30 years of service as a Deputy Sheriff, *id.* at 7), mobile phones are akin to computers as they pertain to storing and sharing child pornography. Indeed, the affidavit's two definitions of the term "computer" would seem to include a smartphone, like an iPhone, within their ambit. *See id.* at 8-9. In sum, in the affiant's experience and training, mobile phones are "ideal repositories" for this type of material. Given that Zappe apparently stored—in a folder named "Special"—and had ready access to view suspected child pornography on his 42-inch computer screen, while allegedly dressed only in his underwear immediately before a scheduled visit by a stranger, it is abundantly clear that there was ample reason to suspect his personal cell phone might contain further evidence of suspected child pornography. The warrant, although not perfect in every respect, was not overbroad as Zappe contends.

## Conclusion

For the reasons stated above, the Motion to Suppress Illegally Obtained Evidence and Request for a *Franks* Hearing, Dkt. No. 30, should be **DENIED**.

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as

a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59. The objecting party shall file the objections with the Clerk of the Court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    **IT IS SO ORDERED**.

    SIGNED this 15th day of October, 2020.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE